UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BIENVENIDO VIERNEZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 4254 |
| | ) | |
| SCHENKER, INCORPORATED, d/b/a | ) | |
| DB SCHENKER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Defendant Schenker, Inc.'s ("Schenker") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Schenker's motion for summary judgment with respect to Counts I-IX is granted. Count X is dismissed without prejudice.

## BACKGROUND[1]

Plaintiff Bienvenido Vierneza ("Vierneza"), an Asian male of Filipino national origin, filed a complaint sounding in retaliation and discrimination due to his sex, race, and national origin against Schenker, his former employer. Schenker was a global freight-forwarding company that provided logistics services for customers worldwide.

---

[1] Unless otherwise noted, the following facts are undisputed for the purpose of this motion. *See* N.D. Ill. L.R. 56.1(b)(3)(B)-(C).

Schenker maintained a facility in Des Plaines, Illinois (the "facility") in which it warehoused customers' freight. Schenker also maintained a loading dock at the facility, where dock workers would load and unload freight from tractor trailers. Schenker acquired the facility on March 1, 2006 from BAX Global, Inc. ("BAX").

Vierneza had worked at the facility since 2000, first as a BAX employee, then with Schenker from March 2006 until September 2010. He worked primarily as a dockhand. His duties included loading and unloading freight from tractor trailers, managing inventory, and operating a forklift. He generally worked the shift from 4:00 p.m. to 12:30 a.m.

Schenker held monthly meetings instructing dockhands on proper loading procedures. Schenker would also track which employee was responsible for loading and unloading a particular piece of freight by requiring each dockhand to scan the goods with a handheld scanner. A dockhand activated the scanner by entering his identification badge number or social security number.

All Schenker employees, including Vierneza, received an Employee Handbook (the "Handbook"). The Handbook outlined Schenker's Equal Opportunity Policy, which provided that the company recruited, hired, trained and promoted persons without regard to race, color, religion, sex, sexual orientation, national origin, age, disability or veteran status. The Handbook also contained Schenker's Harassment-Free Workplace

Policy, which set forth a reporting procedure for bringing instances of harassment to management's attention. The policy instructed employees to report harassment to a supervisor or Schenker's Human Resources Department ("HR"). All employees, including Vierneza, were required to sign an acknowledgment form affirming that they had received and reviewed the Handbook, and that they understood that their employment was terminable at-will. Vierneza signed the form on January 28, 2009.

From 2007 through March 2010, Rosy Miguel ("Miguel"), a Schenker Dock Supervisor and Vierneza's immediate superior, subjected Vierneza to unwanted harassment. She sent Vierneza sexually explicit pictures via text message, called him names like "homosexual" and "faggot," told him that "all Philippine men have small genitals," asked him on numerous occasions if she could hold his genitals, touched her crotch numerous times while in Vierneza's presence, and twice "swiped" Vierneza's paycheck through her genital region before handing it to him. Vierneza did not report Miguel's conduct to any Schenker employees, and no one at Schenker witnessed Miguel's conduct.

On March 8, 2010, Hector DeJesus ("DeJesus"), the facility's Warehouse Manager, received a phone call from a representative at Schenker's Fort Wayne, Indiana facility. The representative notified DeJesus that he had received a truckload that originated from the Des Plaines facility that was loaded with the wrong freight.

DeJesus, who was responsible for personnel issues involving dockhands on his shift, maintains that he investigated the matter and determined that Vierneza was responsible for the misloaded freight. DeJesus accused Vierneza, who denied responsibility and blamed another dockhand. On March 12, 2010, DeJesus met with Vierneza and issued him a Coaching and Counseling Form ("written reprimand"). Vierneza refused to sign the form, and continues to deny responsibility for misrouting the March 8th freight.

On March 31, 2010, Vierneza filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") ("March EEOC Charge"), in which he complained that (1) Miguel's conduct amounted to sexual harassment; (2) the written reprimand resulted from Schenker's discrimination on the basis of his race, national origin, and sex; and (3) the written reprimand was in retaliation for a previous IDHR Charge that Vierneza filed against Schenker in August of 2003. Schenker was notified of the March EEOC charge sometime in April of 2010, marking the first time that anyone in the company's management became aware of Miguel's conduct. Kelly Hitchcock ("Hitchcock"), a Schenker HR representative who was not based at the facility was sent there to investigate the matter. She met with Vierneza on April 28th, at which time he described Miguel's conduct and his feeling that DeJesus did not treat him as well as the other dockhands, most of whom were Latino. When Hitchcock asked Vierneza why he did

not first report these allegations internally in accordance with Schenker's harassment reporting procedure, Vierneza responded that both of his immediate supervisors were the persons harassing him and that Schenker did not have any HR employees at the facility. After investigating Vierneza's sexual harassment allegations, Schenker terminated Miguel for violating the company's anti-harassment policy on June 24, 2010.

On August 5, 2010, Vierneza backed a forklift into a storage rack. The parties disagree over the extent of the damage to the rack. Vierneza alleges that the damage amounted to little more than a scratch, while Schenker claims that the rack had to be dismantled, which caused a loss of storage space. A week later, on August 12th, a truckload of flat-panel LCD televisions was loaded at the facility, along with a large crate stacked on top of the televisions (the "Wichita load"). During transit to Schenker's Wichita, Kansas warehouse, the crate toppled over and crushed several televisions. Upon the truck's arrival, a worker at the Wichita location emailed Stan Nephew ("Nephew"), the Des Plaines facility's general manager, and informed him that the load "looked like it was loaded with a bull dozer," and that the Wichita facility "would have 20+ [Damaged Freight Reports] to enter, not to mention lost revenue." Nephew forwarded the email to DeJesus and Don Scola, another warehouse manager at the Des Plaines facility, and instructed DeJesus to investigate the matter. DeJesus determined that based on Schenker's scanning system, Vierneza was responsible for

loading the trailer and for damaging the Wichita load. Lee Sininger, Schenker's nationwide Director of HR, suggested that discharging Vierneza was appropriate under the circumstances. DeJesus, Nephew and Scola agreed.

On September 2nd, Sininger telephoned Vierneza and informed him that his employment was terminated for the damage that he caused to the Wichita load. Vierneza continues to deny that he was responsible for loading the truck and damaging the televisions.

Vierneza brought this 10-count lawsuit against Schenker for discrimination under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 based on his sex (Count I), race (Counts II and V), national origin (Counts III and VI), and for retaliatory discharge (Counts IV and VII). Vierneza also claims that Schenker failed to pay him for 2.32 hours of accrued, unused vacation time in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count VIII) and the Illinois Wage Payment Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* (Count IX). Finally, Vierneza added a common law claim for intentional infliction of emotional distress ("IIED") (Count X). Schenker now moves for summary judgment on all of Vierneza's claims.

**LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if, in light of the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

**ANALYSIS**

**I.      Title VII Sexual Harassment (Count I)**

Vierneza alleges that Schenker is liable for Miguel's sexual harassment. Title VII prohibits an employer from discriminating against an employee on the basis of that person's sex. 42 U.S.C. § 2000e-2(a)(1); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. 2002). To establish a prima facie case for sexual harassment, a plaintiff must demonstrate that (1) he was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on the plaintiff's sex; (3) the harassment unreasonably interfered with the plaintiff's work performance by creating an

intimidating, hostile or offensive working environment that seriously affected the psychological well-being of the plaintiff; and (4) there is a basis to hold the employer liable for an employee's conduct. *Hall*, 276 F.3d at 354-55.

Schenker argues that there is no basis to hold it liable for Miguel's conduct. An employer's liability under Title VII hinges on whether the harasser is the victim's supervisor or merely a co-worker. *Hall*, 276 F.3d at 355. An employer is strictly liable if a supervisor harasses an employee. *Id.* Schenker maintains it cannot be held strictly liable because Miguel was not a supervisor for Title VII purposes. A "supervisor" under Title VII is "a person with the authority to hire, fire, promote, demote, discipline or transfer." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008); *see also Hall*, 276 F.3d at 355 ("An individual is not a supervisor unless he possesses the authority to directly affect the terms and conditions of a victim's employment.").

It is undisputed that Miguel exercised some authority over Vierneza and other dockhands. For example, she monitored the day-to-day activity on the warehouse floor, oversaw the loading and unloading of inbound and outbound trucks, and processed local deliveries to the warehouse. Schenker nevertheless asserts that it is not strictly liable for her conduct because she did not have the authority to materially affect Vierneza's employment conditions. Vierneza argues that Miguel's overseeing the "attendance, . . . performance reviews, . . . [and] coaching" of dock workers creates an issue of fact as

to the extent of her authority. However merely directing other employees or providing input for performance evaluations does not make one a supervisor under Title VII. *See Hall*, 276 F.3d at 355.

Vierneza also makes much of Miguel's "supervisor" title. But determining whether an employer is strictly liable depends on the nature of the offending employee's authority, not on her title. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004); *see also Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010) (holding that an employee was not a supervisor for Title VII purposes despite having the job title of "crew chief."). Contrary to Vierneza's assertion, the fact that Miguel had Vierneza's phone number and handed him his pay check does not demonstrate that she was a supervisor for Title VII purposes. Because the record indicates that Miguel lacked the authority to materially impact the terms and conditions of Vierneza's employment, she is not a supervisor for Title VII purposes. Therefore, Schenker cannot be held strictly liable for Miguel's conduct.

Since Miguel was not a supervisor for Title VII purposes, the fate of Vierneza's sexual harassment claim lies with whether Schenker was "negligent either in discovering or remedying the harassment." *Hall*, 276 F.3d at 356. An employer is liable for an employee's harassment of a co-worker if it failed to take "reasonable steps

to discover and rectify acts of sexual harassment by its employees." *Id.* (quotation marks and citation omitted).

Here, Schenker had a reporting procedure in place for employees to inform Schenker management or HR of unwanted harassment. Vierneza signed an acknowledgment form evincing his awareness of this procedure and Schenker's broader anti-harassment policy. Vierneza claims that he did not report the harassment because the facility did not maintain an on-site HR department and his harassers were the persons to whom he was supposed to report. But this has little bearing on whether Schenker was negligent in discovering or remedying the harassment. Vierneza makes no allegation that the company negligently hired Miguel or DeJesus, or that their alleged harassment was foreseeable. Additionally, Schenker's reporting procedure was a reasonable way to detect and correct potential harassment. *Id.* (citing *Shaw v. Autozone, Inc.*, 180 F.3d 806, 812 (7th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000)); *see also Gentry v. Export Packaging Co.*, 238 F.3d 842, 847 (7th Cir. 2001) ("[A] sexual harassment policy must provide for effective grievance mechanisms [and] a meaningful process whereby an employee can express his or her concerns regarding an individual within a working environment.") (quotation omitted). Moreover, although Schenker did not learn of Miguel's conduct until after Vierneza filed the March EEOC charge, it was under no duty to do so independently. *See Parkins v. Civil Constructors*

*of Ill., Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998) ("[B]ecause it would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee[,] . . . notice or knowledge of the harassment is a prerequisite to liability.") (quotation and citation omitted). Furthermore, Schenker discharged Miguel less than two months after Hitchcock interviewed Vierneza, thus remedying the cause of his harassment. *See Hall*, 276 F.3d at 357 (noting that an employer is not liable for a co-employee's harassment where it takes prompt action to remedy the problem). In light of the foregoing, the Court concludes that the undisputed facts establish that Schenker did not act negligently in discovering or remedying Miguel's harassment.

Because the evidence demonstrates that Miguel was not a supervisor and that Schenker did not act negligently in detecting or remedying Miguel's harassment, Schenker's motion for summary judgment as to Count I is granted.

## II.  Discrimination and Hostile Work Environment Claims under Title VII and 42 U.S.C. § 1981 (Counts II-III, V-VI).

Schenker argues that it is entitled to summary judgment on each of Vierneza's discrimination and hostile work environment claims under Title VII and 42 U.S.C. § 1981 because Vierneza cannot establish a prima facie case under either theory. To establish a claim for discrimination under Title VII or 42 U.S.C. § 1981, a plaintiff must show that he (1) belongs to a protected class; (2) performed his job to his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) the

employer treated similarly situated employees outside the protected class more favorably. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008). A prima facie case of racial discrimination in the form of a hostile work environment requires a plaintiff to establish that (1) he was subject to unwelcome harassment; (2) the harassment was based on the claimant's race or national origin; (3) the harassment was so severe or pervasive that it altered the conditions of the plaintiff's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

Vierneza alleges that Schenker is liable for discrimination because (1) Miguel told him that "all Phillipine men have small genitals;" and (2) DeJesus discriminated against him because he was of Asian and Filipino descent. As discussed in the previous section, Schenker is not liable for Miguel's conduct because she was not a supervisor for Title VII purposes, and Schenker was not negligent in discovering and remedying the conduct of which Vierneza complained. With respect to Vierneza's claim against DeJesus, he alleges that the written reprimand was evidence of DeJesus's discriminatory motive.[2] However, a written reprimand is not considered an adverse employment action. *See Beamon v. Marshall & Isley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005)

---

[2] Vierneza further alleges that the only other person of Asian descent to have worked for Schenker's Des Plaines location also brought filed an EEOC charge. Because this has no bearing on Schenker's treatment of Vierneza, it is irrelevant to the instant lawsuit and therefore inadmissible. *See Grayson v. O'Neill*, 308 F.3d 808, 816-17 (7th Cir. 2002).

(while negative performance evaluations may be evidence of discrimination, they "are not alone considered to be actionable adverse employment actions.") (citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003)). Furthermore, while Vierneza claims that the reprimand was the "cumulative result of ongoing discrimination," he highlights no other instances of discriminatory conduct by DeJesus. Vierneza therefore does not carry his burden of establishing a prima facie case of discrimination.

Nor can Vierneza establish that he was subject to a hostile work environment due to his race or national origin. A plaintiff must demonstrate that he was subjected to conduct "so severe or pervasive as to alter the conditions of employment and create an abusive work environment." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). A single written reprimand and a subjective belief that it was motivated by racial animus, with nothing more, falls far short of demonstrating a hostile work environment. Schenker's motion for summary judgment as to Counts V and VI are therefore granted.

### III.    Vierneza's Retaliation Claims (Counts IV and VII)

Vierneza alleges that his termination was in retaliation for his filing the March EEOC Charge. To establish a retaliation claim under both Title VII and § 1981, a plaintiff must put forth "evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two."

*Leonard v. E. Ill. Univ.*, 606 F.3d 428, 431 (7th Cir. 2010) (citation omitted). A plaintiff may prove his case under either the direct method or the indirect, burden-shifting method. *Dandy v. UPS*, 388 F.3d 263, 272 (7th Cir. 2004) (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

### A.     The Direct Method

Under the direct method, a plaintiff must show either "an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy*, 388 F.3d at 272. A plaintiff establishes a prima facie case for retaliation with circumstantial evidence if he constructs a "convincing mosaic" that points directly to a discriminatory purpose behind the employer's action, such that a jury may infer the decision-maker's discriminatory intent. *Rhodes*, 359 F.3d at 504.

The Seventh Circuit has recognized three types of circumstantial evidence indicative of an employer's discriminatory intent: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn;" (2) evidence that employees similarly situated to the plaintiff but outside the protected class received systematically better treatment; and (3) evidence showing that the purported victim was qualified for a job but was

passed over because of a protected characteristic, and that the employer's reason for the action is pretextual. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (citation omitted). "Each type of evidence is sufficient by itself to support a judgment for the plaintiff, or they can be used together." *Id.*

Vierneza posits that the timing of his termination, statements made by Schenker employees, and Schenker's allegedly differential treatment of him compared to similarly situated employees paint a "convincing mosaic" of Schenker's retaliatory purpose. First, Vierneza asserts that the timing of his termination relative to when he filed the March EEOC Charge suggests that Schenker retaliated against him. Schenker first learned of Vierneza's EEOC charge sometime in April of 2010. Hitchcock interviewed Vierneza and verified his allegations on April 28th. Schenker did not terminate Vierneza until September 2nd, approximately four months after learning of the EEOC charge. This time period is too long to allow for an inference of retaliatory intent. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (finding that a period of seven weeks between a harassment complaint and termination does not raise an inference of discriminatory intent); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (holding that two-month gap between the protected activity and discharge does not establish causal connection); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (finding that a three

month gap, without more, is insufficient to demonstrate causation). Furthermore, Vierneza offers no explanation as to why the March EEOC Charge would cause Schenker to resolve his harassment complaints by firing Miguel in late June, but then terminate him in retaliation for filing the charge over two months later. The timing of Vierneza's discharge therefore is not indicative of Schenker's retaliatory motive.

Second, Vierneza points to statements made by some members of Schenker's management and HR regarding the Wichita load and his resulting termination. He specifically focuses on an email discussion in which Schenker employees from its Wichita facility, DeJesus, Don Scola, Nephew, and Sininger discussed the damage to the Wichita load, determined that Vierneza was responsible for the damage, and decided that he should be discharged. Vierneza argues that statements made by Sininger and DeJesus demonstrate that "Schenker acted differently than it had in previous circumstances involving similarly situated employees." Sininger's statements allegedly demonstrate a retaliatory purpose because he (1) was the first to suggest terminating Vierneza, (2) stated that the termination comported with the law, and (3) acknowledged that Vierneza's discharge would set a precedent that Schenker must follow. Vierneza claims that DeJesus possessed a retaliatory motive because he (1) agreed with Sininger's recommendation to terminate Vierneza, despite first suggesting that Vierneza

only be punished with another written reprimand, and (2) was aware that Vierneza had filed an EEOC charge while discussing how to punish Vierneza.

Sininger's and DeJesus's statements raise no inference of discriminatory animus. To the contrary, the email discussion focused on the extent of the damage to the Wichita load and on determining the appropriate punishment to mete out to the employee at fault. That the Schenker employees agreed that serious disciplinary action was warranted before they were under the impression that Vierneza was at fault seriously undermines any inference of retaliatory intent. Once DeJesus identified Vierneza as the employee at fault and attached the scanner record verifying Vierneza's involvement to the email, the Schenker employees decided that discharge was appropriate in light of the damage. Under these circumstances, DeJesus's and Sininger's knowledge of the March EEOC Charge is insufficient to establish discriminatory intent.

Vierneza also claims that Sininger's message assuring the email recipients that the termination comported with the law is evidence of discriminatory intent. The Court fails to discern a connection between an employer's statement that it is acting lawfully and a retaliatory purpose. Finally, any retaliatory tinge from Sininger's statement that Vierneza's termination would set a "precedent" is extinguished by his instruction that Schenker is to act consistently with this employment action from that point forward.

In light of the foregoing, the Court perceives no animus from the statements within the email discussion.

Third, Vierneza asserts that other similarly situated Schenker employees received systematically better treatment than he did. Vierneza highlights several employees who damaged freight but received more lenient punishment than him. Schenker maintains that the circumstances surrounding the discipline of these employees were distinct from Vierneza's and that the lesser punishment was warranted. For example, one disciplined employee damaged cardboard, which was less valuable than the televisions that Vierneza allegedly damaged. Another employee received a written reprimand for improperly securing a load, which resulted in damaged freight. Schenker maintains that this employee received a written reprimand because the damage was "cosmetic" and therefore not costly to Schenker. A third employee received a written reprimand for improperly loading a trailer, causing damage to several televisions. Schenker claims that because the televisions were to be delivered on behalf of a different customer that, unlike in Vierneza's case, accepted returns for damaged freight, the discipline was not as harsh. In addition, Schenker points to two employees terminated for conduct that it claims was similar to Vierneza's. One employee was fired after he drove his fork lift into a rack that knocked over and damaged televisions, and then kicked some of the

televisions.  The other employee was terminated because like Vierneza, she misrouted freight to the wrong location.

The evidence establishes that the Schenker employees highlighted by the parties did not receive "systematically better treatment" than Vierneza. *Troupe*, 20 F.3d at 736. It instead demonstrates that Schenker disciplined its employees in consideration of several factors, such as how deserving the employee was of fault, the extent of damage the employee caused to the freight, and how much the damage would cost Schenker. As a result, the Court fails to ascertain a retaliatory motive based on Vierneza's treatment relative to how other Schenker employees were treated.  Even accepting Vierneza's interpretation of the evidence and drawing all inferences in his favor, the fact that three employees may have been disciplined more leniently is insufficient to allow a jury to reasonably infer retaliatory animus, as the evidence falls far short of demonstrating a "convincing mosaic" of retaliatory intent. *See Cole v. Ill.*, 562 F.3d 812, 815 n.4 (7th Cir. 2009) (noting that the "convincing mosaic" standard requires the plaintiff to present circumstantial evidence that, when considered together, would permit a jury to believe that a defendant acted with a retaliatory purpose).  Accordingly, Vierneza does not establish under the direct method that the termination of his employment was in retaliation for filing the March EEOC Charge.

Because Vierneza cannot establish Schenker's retaliatory motive under the direct method, the Court assesses his claim under the indirect method.

## B.     Indirect Method

Under the indirect, or "burden-shifting" method, an employee establishes a prima facie case of retaliation by proving that: (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009). If the plaintiff can establish a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quotation omitted). The burden then shifts to the employee to show that the employer's purported rationale was merely pretextual. *Id.*

Schenker asserts that it terminated Vierneza because of the damage he caused the Wichita load and misrouting freight that led to the written reprimand. Because Schenker offers a non-retaliatory reason for its decision to discharge Vierneza, we consider whether Vierneza has offered sufficient evidence of pretext. *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007) (citation omitted) ("The prima facie case and pretext inquiries often overlap; we may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers

a nondiscriminatory explanation for its employment decision.").[3]  A pretext is "a

deliberate falsehood." *Id.*  To show that a reason is pretextual, a plaintiff must "present

evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health,*

*Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).  A plaintiff does not accomplish this with

evidence suggesting that the employer's belief was inaccurate or unfair. *Id.*  Instead,

the focus of the inquiry is whether the employer "honestly believed the reasons it has

offered to explain the discharge." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir.

2012) (quoting *O'Leary*, 657 F.3d at 635).

Vierneza makes no attempt to challenge the sincerity of Schenker's decision to

discharge him.  He instead relies on his own subjective belief that he was falsely

accused of wrongdoing.  This is not enough to show that Schenker's reason for firing

him was a lie. *See Adelman-Reyes*, 500 F.3d at 665.  This is particularly so in light of

Schenker's evidence establishing that Vierneza was responsible for the damaged freight.

Because Vierneza does not meet his burden under the indirect method,

Schenker's motion for summary judgment with respect to Vierneza's retaliation claims

are granted.

---

[3]  The Court notes that the Seventh Circuit has at times expressed its distaste for proceeding
directly to the pretext stage of the analysis. *See Dandy*, 388 F.3d at 273.  However, Vierneza's prima
facie case largely rests on whether he was meeting Schenker's legitimate expectations.  Schenker
maintains that he was terminated for failing to do so.  In light of the substantial overlap in the
evidence regarding the analyses of Vierneza's prima facie case and his allegations of pretext, it is
appropriate in this case to first examine the parties' pretext arguments.

## IV.  Wage Claims (Counts VIII and IX)

Viernza alleges that Schenker owes him 2.32 hours of accrued, unused vacation time, and that Schenker's failure to pay him violates the FLSA and IWPCA.  To succeed on a claim under the FLSA and IWPCA, Viernza must show that Schenker owes him unpaid wages.  *Rakos v. Skytel Corp.*, 954 F. Supp. 1234, 1240 (N.D. Ill. 1996).  Schenker maintains that it issued Viernza a check on September 17, 2010 that satisfied its debt to him in full.  Although Viernza claims that he is still owed for the 2.32 hours, he presents no evidence that contradicts Schenker's statement that it has paid him in full.  Schenker's motion for summary judgment with respect to Viernza's wage claims is therefore granted.

## V.  Intentional Infliction of Emotional Distress Claim (Count X)

Viernza's remaining claim alleges that Schenker is liable for common law IIED for directing, encouraging, and participating in his discrimination and retaliatiatory discharge.  Because none of Viernza's federal claims remain, the Court declines to exercise jurisdiction over his supplemental state law claims.  *See* 28 U.S.C. § 1367 (c)(3); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010).  The Court therefore dismisses Viernza's IIED claim sua sponte for want of subject matter jurisdiction.

## CONCLUSION

For the aforementioned reasons, Schenker's motion for summary judgment is granted with respect to Counts I-IX.  Count X is dismissed without prejudice for lack of subject matter jurisdiction.

Charles P. Kocoras
United States District Judge

Dated:   September 5, 2012